UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON LEWIS,<br><br>    Plaintiff,<br><br> v.<br><br>SYNCHRONY BANK,<br><br>    Defendant. | Case No. 2:24-cv-00110-DAD-JDP<br><br>**ORDER**<br><br>DENYING PLAINTIFF'S MOTION FOR ELECTRONIC FILING<br><br>ECF No. 10<br><br>**FINDINGS AND RECOMMENDATIONS**<br><br>THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED AND THE COMPLAINT BE DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND, AND THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DISMISSED AS MOOT<br><br>ECF Nos. 4 & 14<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

  In this breach of contract action, plaintiff Jon Lewis filed a pro se complaint alleging that defendant Synchrony Bank unlawfully refused to accept his payment for his credit card debt. Defendant has moved to dismiss, and plaintiff has filed a motion for summary judgment. For the reasons set forth below, I recommend granting defendant's motion and dismissing the complaint

for both lack of jurisdiction and failure to state a claim, and denying as moot plaintiff's motion for summary judgment. *See* ECF Nos. 4 & 14.

**Background**

Plaintiff alleges that in March 2023 he opened a credit card account with defendant. ECF No. 1 at 2. The terms and conditions of the credit agreement list the following payment options: "You can pay by mail, online or by phone. Your payment must be made in U.S. dollars by physical or electronic check, money order or a similar instrument from a bank located in the United States." *Id.* at 9.

Plaintiff contends that he tendered "endorsed" credit card billing slips that functioned as "bills of exchange" to pay his credit card debt.[1] He further alleges that defendant refused to accept the payment, resulting in a breach of the credit card agreement that caused plaintiff financial harm.[2] ECF No. 1 at 3.

Attached to the complaint are three letters that plaintiff sent to the chief financial officer of Synchrony Bank in October and November 2023 that contain somewhat incomprehensible instructions concerning his credit card payments. *See* ECF No. 1 at 11-16. In particular, plaintiff writes that he is "hereby accepting all Titles, all Rights, all Interest, and guaranteed Equity owed to the Principal," and directs the bank's CFO to "apply the Principal's Balance to the Principal's

---

[1] A "bill of exchange" is defined as "[a]n unconditional written order by one person to another, signed by the maker, requiring the person addressed to pay to a third party a specified sum on demand or at a fixed or ascertainable future time." *Gray v. Cap. One Auto Fin.*, 2020 WL 7389904, at *3 (M.D. Fla. Feb. 12, 2020) (citing Black's Law Dictionary (11th ed. 2019)), report and recommendation adopted, 2020 WL 7389992 (M.D. Fla. Mar. 3, 2020). As noted by one district court, "[t]heir use as negotiable instruments appears to have been common in the nineteenth and early twentieth centuries," and "[t]he term also appears on occasion in modern cases . . . in connection with international transactions." *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 758 (W.D. Va. 2007), aff'd, 282 F. App'x 260 (4th Cir. 2008).

[2] The complaint contains allegations that are vague and difficult to decipher. For example, plaintiff asserts that his "complete performance for the account contract pursuant to the Bills of Exchange Act was delivered in good faith by express acceptance of the bills, indorsed, made payable to bearer, and duly presented to defendant, the issuer, by US Postal mail with tender of payment for transfer and set-off." ECF No. 1 at 3; *see also id.* at 4 (describing payments of "collateral security, securities interest and negotiable instruments as good faith presentments for satisfaction on the account"). He further alleges that defendant's "inferior performance occurred when securities made ready for delivery and set-off via negotiable instrument to fulfill payment were refused. *Id.* at 3.

1   consumer credit account . . . each and every billing cycle for set-off." *Id.* at 11; *see also id*. at 13,
2   15.
3         Also attached to the complaint are copies of two payment slips from plaintiff's credit card
4   billing statements that reflect his credit card balances and payment due dates for November 2023
5   and December 2023. *See id.* at 21-22. The November payment slip contains handwritten
6   notations stating "By: Lewis, Jonathan-A/Agent For: JON LEWIS/Principal (without recourse),"
7   "accepted for deposit," and "pay to the bearer," and that plaintiff was paying "$2,017.24," which
8   was the amount that he owed at that time. *Id.* at 21. The December payment slip contains similar
9   handwritten notations, including that plaintiff was paying "$6,112.76," which was the outstanding
10  balance. *Id.* at 22. Plaintiff alleges that he mailed the marked-up payment slips—which he
11  characterizes as "bill of exchange coupons"—to defendant. *Id.* at 3, 21.
12        In December 2023, plaintiff sent a letter to defendant stating that the purported breach of
13  contract warranted the issuance of a "certificate of dishonor." ECF No. 1 at 25-29. Plaintiff in
14  the letter refers to himself as "Creditor" and to defendant as "Borrower," and includes a largely
15  unintelligible "declaration," which states in part:

> This Certificate of Dishonor is hereby issued due to Borrower's
> breach of contract for non-acceptance of Creditor's presentments as
> bills of exchange for payment on the account. By the laws
> governing contract and consumer credit transactions, performance
> on the account by the Creditor was completed by acceptance of the
> bills, indorsed and made payable to bearer or payee, duly presented
> to Borrower by US Postal mail with tender of payment for transfer
> and set-off. The securities were thereby made ready for delivery
> and set-off each and every billing cycle, in which fiduciary duty the
> Borrower has neglected to perform. . . . Creditor's tender of
> payment and notice of claim to interest made Creditor's instructions
> clear to Borrower for proper assignment and transfer of securities in
> the account for payment. Failure to accept Creditor's presentments
> for delivery, done in good faith and with clean hands has resulted in
> unauthorized use of securities . . . and dishonor of the instruments.

24  *Id.* at 26-27.
25        On January 9, 2024, plaintiff filed the complaint asserting a single claim for breach of
26  contract. ECF No. 1. Defendant filed a motion seeking dismissal under Federal Rule Civil
27  Procedure 12(b)(6) for failure to state a claim, and also arguing that the court lacks subject matter
28  jurisdiction. *See* ECF Nos. 4, 9, 12, 13. Plaintiff subsequently moved for summary judgment.

ECF Nos. 14, 16, & 18.

## Legal Standard

Rule 12(b)(1) authorizes a court to dismiss a claim for lack of subject matter jurisdiction.[3] Fed. R. Civ. P. 12(b)(1). A jurisdictional challenge under Rule 12(b)(1) may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court must assume the facts alleged in the complaint to be true and construe them in the light most favorable to the nonmoving party. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In determining a factual jurisdictional challenge, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Dismissal may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, a plaintiff must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability

---

[3] Although included as part of its Rule 12(b)(6) argument, defendant's argument that the court lacks subject matter jurisdiction is in substance a motion to dismiss under Rule 12(b)(1).

1  requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully.
2  *Iqbal*, 556 U.S. at 678.

3  When evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded material
4  factual allegations as true, but not legal conclusions. *Iqbal*, 556 U.S. at 678. The Supreme Court
5  has explained that complaints consisting only of "labels and conclusions" or "formulaic
6  recitation[s] of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.
7  Likewise, a complaint is deficient if it presents nothing more than "naked assertion[s]" without
8  "further factual enhancement." *Id*. at 557. The court may also consider facts established by
9  exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.
10 1987).

11 The court construes a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S.
12 519, 520 (1972) (per curiam). Dismissal of a pro se plaintiff's complaint is appropriate "if it
13 appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which
14 would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017).
15 However, "'a liberal interpretation of a [pro se litigant's pleading] may not supply essential
16 elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d
17 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

## Discussion

19 To proceed in federal court, plaintiff's complaint must establish that subject matter
20 jurisdiction exists. There are two available grounds: "federal question" jurisdiction, which
21 requires a claim raising a federal law issue, or "diversity" jurisdiction," which requires a dispute
22 between citizens of different states and an amount in controversy that exceeds $75,000. *See* 28
23 U.S.C. §§ 1331, 1332. Plaintiff brings this case under diversity jurisdiction.[4] *See* ECF No. 1 at

---

[4] The cover page of plaintiff's complaint states that he is alleging a breach of contract claim and that diversity jurisdiction exists, and there is no indication that he asserts a federal law claim. ECF No. 1 at 1. Although the complaint contains a brief reference to Section 16 of the Federal Reserve Act, *see id.* at 2, this provision does not create a private cause of action. *See Thomas v. Wells Fargo Bank*, 2024 WL 478068, at *6 (S.D. Ala. Jan. 12, 2024) (observing that "district courts across the country have repeatedly rejected attempts to invoke [Section 16 of the Federal Reserve Act] as a private cause of action"), report and recommendation adopted, 2024

1-2. In the motion to dismiss, defendant argues that plaintiff has not satisfied the "amount in controversy" requirement.[5]  ECF No. 4 at 8.

As a general rule, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).  For a claim of damages to be in "good faith," the "plaintiff's 'estimations of the amounts recoverable must be realistic' and objective, not based on 'fanciful, pie-in-the-sky, or simply wishful amounts.'" *Parker v. U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust*, 2020 WL 7479633, at *2 (C.D. Cal. Dec. 18, 2020) (citation omitted).  Dismissal for lack of diversity jurisdiction is warranted if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289.  The "legal certainty" standard is typically satisfied in just three situations: "1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015).

Plaintiff's demand for relief includes the following requests: specific performance to reinstate his credit card account; "complete obligations to transfer securities for set-off to fulfill payment each billing cycle hereafter"; "perform payment on the account for all presentments tendered including past/current and future balances"; "[h]onor plaintiff's claim to all rights, titles, interest and guaranteed equity owed to the Principal"; remove all inaccurate information from all credit reporting agencies; "[r]emunerate the full value of the collateral security investment or the FDIC guaranteed amount backing the account of $250,000.00 USD whichever is greater"; "[r]emunerate the full value of credit due had no breach occurred $2,000/mo. x 9 months =

---

WL 474903 (S.D. Ala. Feb. 7, 2024).  Additionally, plaintiff's unexplained reference to the co-called "Bills of Exchange Act" does not provide a federal cause of action. *See id.* (collecting cases finding that the attempted use of the "Bill of Exchange Act" is frivolous and does not create a federal cause of action).  Accordingly, the court concludes that plaintiff's complaint does not state a federal claim for relief.

[5] Plaintiff alleges that he resides in California and that defendant's principal place of business is in Connecticut.  ECF No. 1 at 2.

1  $18,000." ECF No. 1 at 4.

2  The complaint falls short of establishing that the amount at stake in this litigation is greater than $75,000. While plaintiff alleges that defendant's breach resulted in direct damages totaling $18,000, he fails to make a good faith showing that additional damages are recoverable that satisfy the jurisdictional threshold.[6] In particular, his demand for $250,000 based on "the FDIC guaranteed amount backing the account" seeks relief that is not available on his breach of contract claim.[7] And plaintiff's other requests for equitable relief, as best as they can be understood, do not plausibly demonstrate that the amount in dispute exceeds the jurisdictional minimum.

For these reasons, because it appears "to a legal certainty" that the amount in controversy is far less than $75,000, dismissal of the complaint is required because the court lacks jurisdiction.

The complaint is also subject to dismissal for failure to state a claim under Rule 12(b)(6). A breach of contract claim under California law requires the following elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach of the contract; and (4) damages flowing from the breach. *See CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Additionally, "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930

---

[6] I note that the marked-up payment slips attached to the complaint reflect an unpaid balance of only $6,112.76. *See* ECF No. 1 at 22.

[7] Under California law, "[d]amages awarded to an injured party for breach of contract 'seek to approximate the agreed-upon performance.'" *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 967 (2004) (citation omitted). A plaintiff's damages, however, cannot "exceed what [he or she] would have received if the contract had been fully performed on both sides." *Id.* at 968 (citation omitted). Both general damages and special damages may be recovered. *Id.* General damages are those "that flow directly and necessarily" from, or are a natural result of, the breach of contract. *Id.* (citations omitted). Special damages are "secondary or derivative losses arising from circumstances that are particular to the contract or to the parties," and are recoverable "if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party . . . or were matters of which the breaching party should have been aware at the time of contracting[.]" *Id.* at 968-69 (citations omitted). Here, plaintiff's dispute involves payment of credit card debt—not a bank deposit that is insured by the Federal Deposit Insurance Corporation. As such, plaintiff's request for FDIC-related damages is not valid. *See* 12 U.S.C. § 1811.

(N.D. Cal.2012) (citation omitted).

Plaintiff's complaint includes vague and confusing statements of wrongdoing that lack factual support. Critically, the complaint does not plead facts that plausibly establish essential elements of a breach of contract claim, including that plaintiff performed his contractual obligations, and that defendant committed a material breach. While plaintiff alleges that he tendered payment "for set-off" by mailing defendant endorsed billing slips that functioned as "bills of exchange," he does not contend that he sent defendant a valid check or money order or any other legal form of payment acceptable to defendant under the terms of the agreement. *See* ECF No. 1 at 9. Neither does plaintiff identify any specific contract term that prohibited defendant from refusing to accept his purported "bills of exchange" as payment.

The court also notes that, to the extent that plaintiff contends that the "bills of exchange" qualified as valid legal tender, numerous courts have rejected such claims as frivolous attempts to satisfy a debt. *See Harp v. Police & Fire Fed. Credit Union*, 2023 WL 5152625, at *3 (E.D. Pa. Aug. 10, 2023) (dismissing breach of contract claim involving fictitious "bill of exchange" as payment for credit card debit, when plaintiff "simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to [defendant credit union] as valid legal tender"); *Hennis v. Trustmark Bank*, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous."); *Bryant*, 524 F. Supp. 2d at 758-60 (finding plaintiff's claim "that tendering the Bill of Exchange amounted to legitimate performance of the contract . . . highly implausible" and "clearly nonsense" as "the facts she alleges suggest that she did not tender payment, but rather a worthless piece of paper"); *see also Mould v. Saxon Mortg. Servs., Inc.*, 2005 WL 1950268, at *1-2 (W.D. Wash. Aug. 12, 2005) (dismissing complaint under Rule 12(b)(6) because plaintiffs cited "no statutory or other recognized legal authority . . . which supports [their claim] that they may discharge a contractual obligation by proffering a 'Bill of Exchange' instead of currency or other legal tender").

Overall, the allegations in the complaint reflect that plaintiff attempted to evade his financial obligations to defendant by tendering payment with bogus "bills of exchange" that had

8

no value. Because plaintiff has not alleged facts that plausibly state a breach of contract claim, dismissal of the complaint under Rule 12(b)(6) is appropriate.

Considering plaintiff's pro se status, I recommend that defendant's motion to dismiss be granted and the complaint be dismissed without prejudice and with leave to amend to allow plaintiff the opportunity to correct the noted deficiencies. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (citation omitted). Additionally, I recommend that plaintiff's motion for summary judgment be dismissed as moot.

Plaintiff also asks to utilize the court's electronic filing system. ECF No. 10. I deny this request because plaintiff has not shown good cause.

Accordingly, it is hereby ORDERED that plaintiff's request to participate in electronic filing, ECF No. 10, is denied. Plaintiff shall continue to file paper documents with the court through conventional means.

Further, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss, ECF No. 4, be granted.

2. Plaintiff's complaint, ECF No. 1, be dismissed without prejudice and with leave to amend.

3. Plaintiff be granted fourteen? days from the date of any order adopting these findings and recommendations to file a first amended complaint.

4. Plaintiff's motion for summary judgment, ECF No. 14, be dismissed as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See*

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    July 22, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE